# United States Court of Federal Claims

No: 16-186 C
(Filed: July 7, 2017)
Reissued: August 30, 2017[1]

———————————————————————

|  |  |  |
|---|---|---|
| GEILER/SCHRUDDE & ZIMMERMAN,<br>A Joint Venture, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | Post-Award Bid Protest; Motion to<br>Dismiss; Supplemental Complaint; |
| Defendant, | ) ) | Administrative Record; SDVOSB |
| and | ) ) | |
| INNOVATIVE SUPPORT SOLUTIONS,<br>INC., | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

———————————————————————

*Frank Vincent Reilly*, Frank V. Reilly, Attorney at Law, Fort Lauderdale, FL, counsel for plaintiff.

*Mollie Lenore Finnan*, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, counsel for defendant.

*Patrick Trent Rothwell*, PilieroMazza PLLC, Washington, DC, counsel for defendant-intervenor.

## OPINION AND ORDER

**SMITH, Senior Judge**

       This bid protest action comes before the Court on the parties' cross-motions for judgment on the administrative record and defendant's Motion to Dismiss plaintiff's original and supplemental complaints. Plaintiff, Geiler/Schrudde & Zimmerman, A Joint Venture ("GSZ"), alleges the following: (1) the United States Department of Veterans Affairs ("Agency") acted

———————————

[1] An unredacted version of this opinion was issued under seal on July 7, 2017. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

arbitrarily and capriciously in awarding the bid to defendant-intervenor, Innovative Support Solutions, Inc. ("ISS"); (2) GSZ should have been awarded the bid because it was the lowest-priced offeror; and (3) GSZ's status as a Service-Disabled Veteran-Owned Small Business ("SDVOSB") was improperly revoked by the Agency.  For the reasons set forth below, the Court dismisses plaintiff's Supplemental Complaint, and grants the United States' ("government") and defendant-intervenor's motions for judgment on the administrative record.

## I.    Background

### A.  Factual History

On June 9, 2015, the Agency issued the Request for Proposals ("RFP") for Solicitation No. VA 289-15-R-0311 ("Solicitation") for the upgrade of a chiller plant at one of the Agency's medical centers in Lexington, Kentucky.  Administrative Record at 45 (hereinafter "AR __").  The RFP was expressly set aside for SDVOSBs.  *Id.*  The federal SDVOSB program reserves specific government contracts for service-disabled veteran-owned small businesses.  38 U.S.C. § 8128 (2012).  The RFP requires that each offeror submit a price proposal and a technical proposal.  AR 70.  The Agency would then award the Solicitation to whichever offeror submitted the "lowest price, technically acceptable offer."  AR 72; *accord* FAR 15.101-2 (2017).  The offeror with the lowest "evaluated price" wins the award if it meets or exceeds the RFP's non-price factors.  AR 72.

In this case, there are four evaluation factors currently at issue.  AR 73-74.  First, the experience factor requires offerors to provide three "completed projects" with a contract value of at least $3 million showing experience in "civil, HVAC, electrical, low voltage, mechanical, and fire protection."  AR 73.  The standard for acceptability is "complete project title, locations, contract, price, trades involved, [and] start and completion dates."  *Id.*  Second, the infection control measures factor requires "successful" measures taken for the "Highest Risk Group 4 for Type A, B, C, and D mitigation precautions."  *Id.*  The standard for acceptability is a demonstration of "[t]wo success[fully] completed projects" that applied the "Highest Group 4 mitigation precautions."  *Id.*  Third, the past performance factor requires three "completed projects" with a contract value of at least $3 million.  AR 74.  The standard for acceptability is based on whether the government deems those submissions "satisfactory" after an evaluation on the "relative merits."  *Id.*  Fourth, the price factor requires each offeror to list a "base offer," along with a detailed price breakdown.  AR 45, 49, 74.  The Agency will then evaluate the price based on reasonableness, pursuant to FAR 15.4, as well as a possible cost realism analysis to determine if the price was consistent with the offeror's technical proposal.  FAR 15.404 (2017).  The standard for acceptability is the achievement of a price proposal consistent with the requirements and contract documents.  *Id.*

The Agency received six proposals, including those submitted by ISS and GSZ.  AR 1667-2126.  Each offeror submitted a bid bond with their proposals.  AR 2127-2158.  The Agency then determined that ISS had the lowest evaluated price at $8,663,000, while the plaintiff submitted the third-lowest price at $8,964,548.  AR 2159-60.  Once it determined that ISS proposed the lowest price, the Agency evaluated ISS for technical acceptability.  AR 2161-88.  The Technical Evaluation Board ("TEB"), determined that ISS was technically

acceptable for all non-price factors.  AR 2161-82.  Following the determination of technical acceptability, the Source Selection Authority ("SSA") issued its recommendation that ISS receive the bid because it was the "best overall value to the [g]overnment" and the lowest price, technically acceptable offer.  AR 2188.

On September 23, 2015, the Agency notified plaintiff that it had not received the award. AR 2189-202.  On September 24, 2015, ISS was awarded the bid.  AR 2203-04.

## B. Procedural History

### 1. Original Complaint

On October 1, 2015, plaintiff filed a protest with the Government Accountability Office ("GAO") contesting the Agency's decision to grant the award to ISS.  AR 2279-83, 2820-31. Plaintiff alleged, in relevant part, that (1) the Agency should have evaluated and accepted GSZ's alternative price proposal and (2) ISS's proposal was technically unacceptable.  AR 2820.  On January 7, 2016, the GAO ultimately denied those claims, and dismissed in part and denied in part the remainder of plaintiff's protest.  AR 2820-31.

On February 8, 2016, plaintiff filed its Original Complaint in this Court.  Post Award Bid Protest (hereinafter "Compl."), ECF No. 1, at 1.  On May 9, 2016, plaintiff filed its Motion for Judgment on the Administrative Record, based on the following arguments: (1) ISS's three submitted projects prove that it is non-responsible and technically unacceptable; (2) ISS's submitted bonding commitment shows that it is non-responsible and technically unacceptable; (3) ISS failed to meet the infection control measures factor, and thus is ineligible for the award as a matter of law; and (4) the Agency failed to properly evaluate all price proposals.  Plaintiff Geiler/Schrudde Zimmerman's Motion for Judgment on the Administrative Record (hereinafter "P's MJAR"), ECF No. 24 at 2-3.

On June 10, 2016, the government filed a motion to dismiss plaintiff's original complaint or, in the alternative, for judgment on the administrative record.  Defendant's Motion to Dismiss or, Alternatively, for Judgment on the Administrative Record, and Opposition to Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "D's MJAR"), ECF No. 30 at 1-2.  The government rejects plaintiff's claims and argues that plaintiff lacks standing, asserting that GSZ lost its SDVOSB status upon the death of Mr. William R. Geiler, Jr., the service-disabled veteran, on March 18, 2016.  *Id.* at 5.  The government argues that, because plaintiff is no longer an "interested party," it lacks standing to protest the Agency's award decision.  *Id.* at 7; 28 U.S.C. § 1491(b)(1) (2012).  Additionally, on June 10, 2016, defendant-intervenor, ISS, filed its Cross-Motion for Judgment on the Administrative Record. Defendant-Intervenor's Opposition to Plaintiff's Motion for Judgment Upon the Administrative Record and Cross-Motion for Judgment upon the Administrative Record (hereinafter "DI's MJAR"), ECF No. 28 at 1-2.  ISS argues that plaintiff cannot adequately demonstrate that ISS was ineligible to receive the award.  *Id.*

### 2. Supplemental Complaint

Mr. Geiler's death triggered a revocation of GSZ's SDVOSB status. Defendant's Motion to Dismiss the First Amended Supplemental Complaint or for Judgment on the Second Administrative Record, and Opposition to Plaintiff's Motion Regarding the Same (hereinafter "D's Supp. MJAR"), ECF No. 83 at 6. On April 29, 2016, the Agency's Center for Verification and Enforcement ("CVE") corresponded with the Geiler family regarding their entities' SDVOSB statuses. Supplemental Administrative Record at 21-22 (hereinafter "SAR__"). On May 5, 2016, the CVE e-mailed a Notice of Proposed Cancellation ("NOPC") to each of the Geiler entities, informing them that their SDVOSB statuses might be revoked due to Mr. Geiler's death, pursuant to 38 C.F.R. § 74. SAR 30-38. On June 7, 2016, the CVE e-mailed each entity a Notice of Verified Status Cancellation ("NVSC"), cancelling their SDVOSB statuses. SAR 91-94. On July 6, 2016, the Geiler Company, Inc. ("Geiler Co.") submitted a consolidated appeal to the Office of Small and Disadvantaged Business Utilization and Center for Verification and Evaluation ("OSDBU") contesting the CVE's decision to cancel the SDVOSB statuses of all of the Geiler family's entities. SAR 102. On August 22, 2016, the OSDBU denied Geiler Co.'s consolidated appeal, upholding the CVE's decision to cancel the SDVOSB statuses of all of the entities. SAR 173-85.

On October 20, 2016, plaintiff filed its Supplemental Complaint, contesting the Agency's decision to cancel its SDVOSB status. Plaintiff's First Amended Proposed Supplemental Complaint (hereinafter "P's Supp. Compl."), ECF No. 58 at 2-3. On March 6, 2017, plaintiff filed its Motion for Judgment on the Administrative Record as to the Supplemental Complaint. Plaintiff's Motion for Judgment on the Administrative Record as to the Plaintiff's Supplemental Complaint (hereinafter "P's Supp. MJAR"), ECF No. 80 at 1. Plaintiff argues that (1) its due process rights were violated and (2) the Agency's decision-making process in revoking the SDVOSB status was arbitrary and capricious. *Id.* at 5. On April 3, 2017, the government filed a motion to dismiss the supplemental complaint or, alternatively, for judgment on the administrative record. D's Supp. MJAR at 1-2. The government contends that (1) plaintiff lacks standing because the Agency's cancellation of plaintiff's SDVOSB status is wholly unrelated to the original suit; and (2) judgment on the administrative record should be granted because the Agency did not violate plaintiff's due process nor act arbitrarily and capriciously. *Id.* The original motions and supplemental motions for judgment on the administrative record are fully briefed and ripe for review.

## II.  Discussion

### A. Standard of Review

The Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v.*

*Testan*, 424 U.S. 392, 398 (1976).  Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

Specifically, this Court has jurisdiction over bid protest actions, pursuant to 28 U.S.C. § 1491(b).  The Court evaluates bid protests under the Administrative Procedure Act's standard of review for an agency action.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Under Rule 52.1 (formerly Rule 56.1) of the Rules of the Court of Federal Claims, the parties are limited to the administrative record, and the Court makes findings of fact as if it were conducting a trial on a paper record.  *Id.* at 1354.  Looking to the administrative record, the Court must determine whether a party has met its burden of proof based on the evidence in the record.  *Id.* at 1355.

Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1), which requires that bid protest be brought by an "interested party."  A protestor is an "interested party" if it "(1) [is an] actual or prospective bidder and (2) possess[es] the requisite direct economic interest." *Weeks Marine, Inc., v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)).  "To prove a direct economic interest as a putative prospective bidder, [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract." *Id.*; *see also Info. Tech. & Appl. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("To establish prejudice, [the protestor] must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."); *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1580 (Fed. Cir. 1996). The nature of the protest will dictate the necessary factors for a "direct economic interest." *Sys. Appl. & Techs. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012).

## B.  Post-Award SDVOSB Status

Before the Court can review the merits of plaintiff's Supplemental Complaint, it must first examine the question of jurisdiction.  *See Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (stating that jurisdiction is a threshold question).  The government asserts that plaintiff lacks standing to bring its Supplemental Complaint.  The Court is inclined to agree, as the SDVOSB revocation does not affect the award of the original procurement and, as a result, is unrelated to the Original Complaint.

Additionally, the government argues that when the plaintiff lost its SDVOSB status, it ceased to be an interested party in the bid protest, as it no longer retained a "direct stake in the relief sought."  D's MJAR at 9.  This Court does not agree.  Under the Tucker Act, a protestor is an interested party if it "*was* an actual . . . bidder or offeror, and . . . *had* a direct economic interest in the procurement." *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1344 (Fed. Cir. 2008) (emphasis added).  In post-award protests, a protestor must also prove that "it *had* a 'substantial chance' of receiving the contract." *NEIE, Inc. v. United States*, No. 13–164 C, 2013 WL 6406992, at *14 (Fed. Cl. Nov. 26, 2013) (emphasis added) (quoting *Digitalis Educ. Solutions, Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012)).  Standing is determined

at the time of the award.  Plaintiff was a SDVOSB at the time of the award on September 23, 2015.  Therefore, it is irrelevant that Mr. Geiler died after the Original Complaint was filed.  This Court retains jurisdiction over plaintiff's Original Complaint.

As plaintiff had standing at the time of its Original Complaint, its current SDVOSB status is outside of the scope of this protest.  For standing under the Tucker Act, the plaintiff must have an "object[ion] to a . . . regulation in connection with a procurement."  28 U.S.C. § 1491(b)(1) (2012).  Courts have broadly construed the phrase "in connection with."  *Id.*; *RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999); *see also Gov't Tech. Servs. LLC v. United States*, 90 Fed. Cl. 522, 529-30 (2009).  However, an "agency's actions under a statute [must] so clearly affect the award and performance of a contract" for it to be "in connection with a procurement."  *RAMCOR*, 185 F.3d at 1289; *see also Spherix, Inc. v. United States*, 62 Fed. Cl. 497, 503 (2004).  Plaintiff's SDVOSB status was revoked in an unrelated proceeding, independent of the contract award at issue.  SAR 173-85; *see also* SAR 190-91, 211-15 (showing that Geiler Co. had its SDVOSB status cancelled from a protest involving another procurement bid).  As this Court has jurisdiction over the Original Complaint, regardless of plaintiff's current lack of SDVOSB status, the post-award revocation of that SDVOSB status does not "clearly affect" the procurement, and this Court will not endeavor to encroach upon the autonomous jurisdiction of the OSDBU.  Therefore, defendant's Motion to Dismiss the Supplemental Complaint is granted for lack of jurisdiction.

### C.  GSZ's Motion for Judgment on the Administrative Record

In its Motion for Judgment on the Administrative Record, plaintiff argues that ISS is ineligible for the award and that the Agency did not adequately evaluate the price proposals of the other offerors.  This Court does not agree.  Plaintiff is merely a "disappointed bidder," and it has failed to overcome the "heavy burden of showing that the award decision 'had no rational basis.'"  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 283 F.3d 1324, 1333 (Fed. Cir. 2001) (quoting *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 456 (D.C. Cir. 1994)).

### 1.  Awardee Ineligibility

GSZ alleges that ISS's proposal is not technically acceptable because it did not meet the "[s]olicitation's mandatory requirements," and is, thus, ineligible for the award as a matter of law.  P's MJAR at 11.  Plaintiff argues that ISS is unqualified because the following demonstrations were allegedly insufficient under the Solicitation: its (1) first project consisting of replacing four air handling units; (2) second project providing temporary power via a critical power distribution system; (3) third project requiring the upgrade of another chiller plant at a hospital; (4) bonding commitment that included the indemnity obligations of one ***; and (5) three projects demonstrating infection control measures taken.  *Id.* at 13-17.

In determining whether an agency's procurement decision was arbitrary and capricious, the Court should not substitute an agency's otherwise reasonable and rational decision for that of its own.  *Plasan N. America, Inc. v. United States*, 109 Fed. Cl. 561, 571 (2013).  The rational basis standard is "highly deferential" and entitles the agency "to a presumption of regularity."

*CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 479 (2013).  So long as an agency
"'consider[s] the relevant factors' and is 'within the bounds of reasoned decision[-]making,'" the
rational basis standard will be met.  *Info. Scis. Corp. v. United States*, 80 Fed. Cl. 759, 773-74
(2008) (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105
(1983)).  Discretion is further enhanced when an agency conducts a "technical evaluation of an
offeror's proposal."  *L-3 Commc'ns Eotech, Inc. v. United States*, 87 Fed. Cl. 656, 664 (2009).
The Court might disagree with an agency's technical conclusion, but it typically will not
second-guess such "discretionary determinations" that fall within the ambit of an agency's
expertise.  *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *see also Fort
Carson Servs. v. United States*, 71 Fed. Cl. 571, 586 (2006) (requiring the "greatest deference
possible" because of the "special expertise of procurement officials").

In arguing that ISS is ineligible for the award, plaintiff asserts that ISS's first project
failed to satisfy the experience and past performance requirements required by the RFP.  The
Agency determined that ISS met the experience and past performance requirements through the
demolition and replacement of four "air-handling . . . units installed on the roof of [a] building"
at one of the Agency's departments.  AR 2094.  ISS indicated that this project was substantially
completed.  *Id*.  Plaintiff argues that the RFP demanded "completed" projects, not "substantially
completed" projects, and, as a result, ISS's first project does not meet the RFP's requirement.
P's MJAR at 13.  Additionally, plaintiff asserts that the first project fails the civil and fire
protection requirements because ISS only performed "minor repairs relating to sidewalks and
green areas," and "only relocated one [ ] fire sprinkler," respectively.  *Id.* at 14.  This Court will
not infringe upon the Agency's discretion by concluding that ISS was not technically acceptable
absent evidence that the Agency acted unreasonably.  In bid protest actions, "small errors made
by the procuring agency are not sufficient grounds for rejecting an entire procurement."  *Gruman
Data Sys. Corp. v. Widnall*, 15 F.3d 1044, 1048 (Fed. Cir. 1994); *see also M.W. Kellog
Co/Sicilian Appalti Costruzioni, S.p.a. v. United States*, 10 Cl. Ct. 17, 26 (1986) ("Where a
defect in a bid is trivial or a mere formality, not material, the bid is not required to be rejected out
of hand.").  Further, the RFP does not define the terms "civil" or "fire protection work."  Instead,
those terms are part of the "minutia of the procurement process," over which the Agency has
discretion.  *E.W. Bliss Co.*, 77 F.3d at 449.  As such, the Agency did not abuse its discretion in
finding the first project technically acceptable.

Plaintiff further contends that ISS's second project fails to satisfy the experience and past
performance requirements.  The Agency determined that ISS's task of providing temporary
power distribution systems to "support two data center power panels" was technically
acceptable.  AR 2097.  GSZ argues that "welding together two shipping containers," and
providing "two [ ] 1,000 KVA generators and two [ ] 500 KVA UPS systems" are not civil and
low voltage work, respectively.  P's MJAR at 14.  Again, the Agency rendered a conclusion that
falls within its discretion, and this Court will not infringe upon that discretion.

Additionally, plaintiff argues that ISS's third project failed to meet the $3 million
threshold required by the RFP, and that ISS was not even a part of the project team.  ISS's third
project was the upgrade of another chiller plant at Advocate Good Samaritan Hospital, which the
Agency determined to be technically acceptable.  AR 2099.  The Court reiterates that the Agency
determines what qualifies as adequate work under the RFP.  *Glenn Def. Marine (Asia), PTE LTD*

*v. United States*, 97 Fed. Cl. 568, 578 (2011) (saying that, as long as the "[s]olicitation provides sufficient information to allow offerors to bid intelligently and to allow the agency to meaningfully evaluate competing proposals," it is valid). Moreover, ISS's demonstration indicates that this project was valued at $3,157,800, with the owner of the hospital providing the chillers and towers. Plaintiff argues that ISS should not have included the cost of those chillers and towers in total project cost because ISS did not directly pay for them. The TEB, SSA, and GAO took no issue with this inclusion. AR 2161-88. Plaintiff does not provide sufficient evidence to warrant a finding that the Agency's decision was outside the scope of its discretion.

Plaintiff then argues that, because ISS subcontracted out its third project, that project should not apply under experience and past performance requirements. FAR 15.305(a)(2)(iii) states that past performance evaluations can include "subcontractors [that] will perform" important aspects of the solicitation. *Id.*; *see also Braseth Trucking, LLC v. United States*, 126 Fed. Cl. 608, 615 n.8 (2016). Though the TEB determined the inclusion of this project was a weakness in ISS's proposal, that weakness alone did not disqualify ISS from the award. AR 2161. This determination falls well within the Agency's discretion, and this Court shall not interfere with that discretion.

Plaintiff next asserts that ISS's bid bond is deficient because the indemnity obligation of *** was not incorporated into the original bid bond documents. AR 2070. Western Surety, through its affiliate CNA Surety ("CNA"), acts as the surety for ISS. On July 6, 2015, CNA notified the Agency that *** would be the indemnifier for CNA. *Id.* Essentially, plaintiff is arguing that, because *** is not named in ISS's bid bond documentation, the reliability of ISS's performance and ***'s indemnification is insufficient and renders the bid bond invalid. The government asserts that there is not enough evidence to prove "such support compromise[s]" the obligations of the parties, and that ISS satisfactorily "identified the RFP; the project name; ISS as the principal; and [CNA] as the surety[, indemnified by ***]." D's MJAR at 24. The Agency received adequate information to make a rational decision and was well within the bounds of its discretion in determining that ISS had a clear bid bond obligation.

Furthermore, plaintiff argues that the three projects ISS submitted do not meet the RFP's requirements as to infection control measures. ISS demonstrated that it was the primary contractor for one project, while the other two projects were performed by ISS's subcontractors. AR 2113-15. Once again, FAR 15.305(a)(2)(iii) allows agencies to consider subcontractor experience and past performance when evaluating a prime contractor's bid proposal. FAR 15.305(a)(2)(iii) (2017). The Agency has not abused its discretion by following the FAR.

Finally, plaintiff argues that because the Solicitation required successful demonstrations of type "A, B, C, *and* D" infection mitigation, ISS's failure to demonstrate type A, B, or C is a failure to meet the RFP's requirements. AR 73 (emphasis added). The government argues that the RFP does not explicitly state that the bidder demonstrate all four types, and that demonstration of type D precautionary measures may qualify a bidder as to types A, B, and C. *Bowman Transp. Inc. v. Arkansas-Best Freight Sys, Inc.*, 419 U.S. 281 286 (1974) ("[U]phold[ing] a decision of less than ideal clarity if the agency's path may reasonably be discerned."). The TEB determined that ISS's proposal was adequate. The RFP required

demonstrations of infection mitigation, and the Agency reasonably concluded that ISS had the experience and past performance necessary to complete the contract.

## 2. The Agency's Price Evaluation

In addition to its argument that ISS was not qualified to receive the award, plaintiff alleges that the Agency "failed to properly evaluate all price proposals," arguing that the Agency (1) failed to evaluate the proposals in accordance with FAR 15.4 by ignoring GSZ's alternate price and (2) inaccurately deemed ISS responsible under FAR 9.1. P's MJAR at 17-33. The Court disagrees with those assertions.

The Agency asked each offeror to list its "base offer" and provide a price breakdown so that it might evaluate each offeror's proposed price in "accordance with FAR 15.4." AR 45, 49, 74. FAR 15.4 provides the general procedures by which an agency evaluates price proposals. An agency may evaluate price using any "analytical techniques and procedures. . . singly or in combination with others," so long as it "ensure[s] that the final agreed-to price is fair and reasonable." FAR 15.404-1(a)(1) (2017). An agency may compare offerors' prices to each other if there is adequate price competition or compare proposed prices to historical prices. *Id.* 15.404-1(b)(2)(i)-(ii) (listing the two "preferred techniques"). The "level of detail" required for each analysis will be determined by a totality of the circumstances. *Id.* 15.404-1(a)(1).

Among the six proposals there existed a competitive standard deviation of "4.77%," and none of the proposed prices were too far off the Agency's estimate of $7,306,026. *See* AR 74, 2188 (determining reasonableness "by comparing offered prices with the [Agency's] estimate"). Furthermore, "good price realism" was reflected through the RFP's adequate price competition. *Id.* When there exists a "firm-fixed-price contract. . . comparison of the proposed prices will usually satisfy the requirement to perform a price analysis, and a cost analysis need not be performed." FAR 15.305(a)(1) (2017). This Court is not persuaded by plaintiff's argument that the price evaluation was conducted "impossibl[y]" fast. P's MJAR at 29. A more in-depth evaluation of each offeror's price would have been unnecessary, as ISS's offer was the lowest and its proposal was technically acceptable.

This Court is unmoved by plaintiff's argument that the Agency should have analyzed GSZ's alternate price. In its proposal, GSZ listed its base offer at $8,964,548. P's MJAR at 30. Plaintiff argues that a more in-depth evaluation would have alerted the agency to a potential $450,000 deduction, lowering the base offer to $8,514,548 and making GSZ the lowest bidder. *Id.*; AR 1673. By its own admission, the potential $450,000 decrease is contingent upon an outside-party subcontractor who *might* perform the work for less money. *See* AR 1673 ("[GSZ] would have to contract directly with [subcontractor' for those [ ] changes."). If GSZ truly believed that its base offer was $450,000 lower than the number provided, it should have reflected the lower number in its base offer. The GAO determined that the Agency was not required to "evaluate GSZ's 'voluntary alternate' price," and this Court agrees with that decision. *See* AR 2828-30.

Finally, the Agency properly determined that ISS is a responsible bidder pursuant to FAR 9.104. A determination of responsibility is well within the bounds of an agency's discretion, and nothing in the record supports the plaintiff's assertion that ISS was non-responsible. The administrative record supports a finding that the Agency's decision-making was reasonable and proper. As such, this Court must reject plaintiff's arguments and uphold the Agency's award.

## III.    Conclusion

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record as to the Supplemental Complaint is **DENIED**. Defendant's MOTION to Dismiss the Supplemental Complaint is **GRANTED**. Plaintiff's MOTION for Judgment on the Administrative Record as to the Original Complaint is **DENIED**. Defendant's and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record as to the Original Complaint are **GRANTED**. The Clerk is directed to enter Judgment in favor of the defendant, consistent with this Opinion.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[2] This opinion shall be unsealed, as issued, after July 24, 2017, unless the parties identify protected and/or privileged materials subject to redaction prior to that date. Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.